F I L E D
CLERK OF COURT

2025 OCT 23 AM 8: 37

SUPERIOR COURT
OF GUAM



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0492-22** |
| vs. | **DECISION AND ORDER** |
| **FREDDY CUEVAS SUSUICO,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on June 24, 2025, July 2, 2025, and July 7, 2025, for hearing on Defendant **FREDDY CUEVAS SUSUICO's** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Grant Olan on behalf of the People of Guam ("the Government") and Defendant with counsel, Heather Martinez Quitugua. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with several counts of Theft by Receiving (As a Second Degree Felony); Burglary (As a Second Degree Felony); Possession of a Schedule II Controlled Substance (As a Third Degree Felony); Assault Against a Peace Officer (As a Third Degree Felony); and Criminal Mischief (As a Misdemeanor).[1] *See* Superseding Indictment, Oct. 29,

---

[1] Defendant was initially charged with several counts of Theft of a Motor Vehicle (As a Second Degree Felony) and Theft of Property (As a Second Degree Felony). *See* Indictment, Aug. 4, 2022. The Government subsequently obtained a Superseding Indictment against Defendant, changing the First and Second Charges to Theft by Receiving

---

*People v. Susuico*
Case No. CF0492-22
Decision and Order

2024. The charges stem from various locations and dates throughout 2021 to 2022. *Id.* On January 6, 2025, Defendant filed the instant Motion. On January 17, 2025, the Government filed its Opposition. No Reply was filed.

On June 24, 2025, the Court heard sworn testimony from Guam Police Department ("GPD") Officer Nate Lorenzo. On July 2, 2025, the Court heard sworn testimony from GPD Sargeant Christopher Dawson, and on July 7, 2025, GPD Officer Donny Pangelinan. The Court ascertained the following facts from witness testimony:

1. On or about July 26, 2022, Officer Lorenzo pulled into the NCS Gas Station when he observed a motorcycle without a rear license plate by the exit.

2. Officer Lorenzo was in a GPD uniform and was driving a marked GPD patrol vehicle.

3. Officer Lorenzo activated his lights and siren to effectuate a traffic stop, but the operator took off and drove away on Route 3.

4. Officer Lorenzo testified that he made a radio call as he was leaving NCS Gas Station to report the incident.

5. Officer Lorenzo followed the motorcycle northbound on Route 3 to Chalan Ramirez (Zero Down area) in Yigo. While in pursuit, Officer Lorenzo observed the operator look back at him, overtake multiple cars on the road and travel on the wrong portion of the roadway. Officer Lorenzo testified the operator was driving over the speed limit and weaving in and out of traffic without using turn signals.

6. Eventually, the operator of the motorcycle either fell off the bike or crashed by the entrance to Chalan Ramirez and took off running.

7. Officer Lorenzo stopped his patrol car and chased after the operator on foot. It was dark and it was raining.

8. Officer Lorenzo yelled for the operator to stop but the operator continued running and ran into the jungle.

---

(As a Second Degree Felony). *See* Superseding Indictment, Oct. 29, 2024. Charge One – Counts One, Two, and Four, and Charge Two – Counts One, Two, Three, Four, and Five in the Superseding Indictment were dismissed by the Court in April 2025. *See* Dec. & Order, Apr. 23, 2025.

*People v. Susuico*
Case No. CF0492-22
Decision and Order

9. Officer Lorenzo chased after him into the jungle and eventually tackled him to stop him from running.

10. While pursuing on foot, Officer Lorenzo did not hear the operator say or yell anything, but saw the operator reach into his jacket and look back. Officer Lorenzo testified that he thought there might be a weapon and was in fear for his life.

11. Officer Lorenzo testified that after he tackled the operator from the back, they fell to the ground. Officer Lorenzo mounted the operator and the operator punched his arms and was struggling. Officer Lorenzo ordered the operator to stop resisting and gave him a closed fist to his abdominal area to make him comply. The operator continued to resist and Officer Lorenzo felt his arm reach around his waist near his firearm so he struck him again, this time in his face. Officer Lorenzo testified the operator still did not comply so he picked up the operator, threw him and mounted him again.

12. Officer Lorenzo forced the operator to turn on his stomach and cuffed him. Officer Lorenzo testified that the operator was still resisting up to this point.

13. After the operator was handcuffed, he was picked up and escorted out of the jungle. Officer Lorenzo testified that the operator was compliant at this point.

14. Officer Lorenzo did not have a taser on him at that time, only his firearm.

15. Officer Lorenzo brought the operator back to the marked patrol car and waited for other units to arrive. Officer Lorenzo had not identified the operator at this point.

16. Officer Lorenzo patted the operator down for weapons and asked him if he had anything in his pockets. The operator responded that he had "ice."

17. Officer Lorenzo field tested the "ice" which tested presumptive positive for methamphetamine.

18. Officer Lorenzo checked the vin number for the motorcycle and identified it as being stolen.

19. Officer Lorenzo testified that Defendant did not appear to be injured and that he did not receive medical treatment.

20. Officer Pangelinan arrived on scene a little after 7:00 p.m. and saw the motorcycle abandoned in the middle of the roadway in front of YJ Mart. Officer Pangelinan did not notice any damage to Officer Lorenzo's patrol vehicle.

21. Officer Pangelinan met with the operator who was already secured in Officer Lorenzo's patrol vehicle and identified him as Defendant. Officer Pangelinan told Defendant that he needed to speak with him regarding open cases. Defendant said he was willing to talk to him.

22. Officer Pangelinan testified that there were 24 open cases he wanted to interview Defendant about.

23. Officer Pangelinan transferred Defendant from Officer Lorenzo's patrol car to his patrol car and brought Defendant to the Dededo Precinct. Officer Pangelinan could not recall if Defendant made any statements during the transit to the Dededo Precinct. Officer Pangelinan arrived at the Dededo Precinct at 7:30 p.m.

24. Officer Pangelinan testified that Defendant complained of pain to his rib cage and his right middle finger was injured. Defendant complained that he could not use his right hand. Officer Pangelinan testified that Defendant told him the pain was from when the motorcycle spilled on the road.

25. Officer Pangelinan testified that Guam Fire Department medics assessed him but they did not transport him to the hospital because the injuries were not life threatening. They advised Defendant to seek medical attention at a later time, if need be. The medics examined Defendant before Officer Pangelinan interviewed him.

26. Officer Pangelinan advised Defendant of his *Miranda* rights at 9:07 p.m. and proceeded with the interview shortly thereafter.

27. Defendant waived his *Miranda* rights by signing a written form. Officer Pangelinan acknowledged that Defendant is right-handed and that he had to sign the form with his left hand. Officer Pangelinan testified that he reminded Defendant of his *Miranda* rights verbally every time they started talking about a new case.

28. Defendant spoke with Officer Pangelinan about the open GPD cases. Defendant openly admitted and gave information about some of the cases. For some of the cases, Defendant initially denied but then later recanted and admitted to them.

29. Defendant never asked Officer Pangelinan to stop the interview or for an attorney.

30. Officer Lorenzo advised Defendant of his *Miranda* rights around 9:41 p.m. Defendant signed a written waiver of his rights. Officer Lorenzo interviewed Defendant about the incident that night.

31. At some point during the interview, Defendant stated he did not want to answer any more questions and the interview was stopped. Prior to stopping the interview, Defendant made statements that he had run because he was on parole and he had smoked the "ice" earlier.

32. Defendant was not handcuffed during his interviews with both Officer Lorenzo and Officer Pangelinan, and neither officer had their weapons drawn during the interview.

33. No one else was present when Officer Lorenzo interviewed Defendant.

34. No one else was present when Officer Pangelinan interviewed Defendant.

35. Defendant was arrested at 10:00 p.m.

36. Officer Lorenzo testified that he acted in accordance with GPD policies and procedures on the use of force.

37. Officer Pangelinan testified that the use of force is permissible when an officer is faced with imminent danger. Officer Pangelinan indicated that it could be permissible to pick someone up off the ground and throw them if they are in danger, and it would also be permissible for an officer to draw a service weapon when pursuing a fleeing individual at night and the individual is looking back at the officer while reaching into their jacket.

## DISCUSSION

Defendant made several statements throughout his encounter with GPD on the night of July 26, 2022. Defendant made a statement admitting to having "ice" on him to Officer Lorenzo at the scene and subsequently made several statements during his interviews with Officer

Pangelinan and Officer Lorenzo at the Dededo Precinct. Defendant argues that the statement made at the scene must be suppressed because he was not advised of his *Miranda* rights and the statements made at the precinct must be suppressed because they were not voluntarily made but as "the product of physical intimidation." Defendant also moves for the statements to be suppressed because they were not audio or video recorded.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, and is applicable to Guam through the Organic Act. *See* 48 U.S.C.A. § 1421b(d). "The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). The burden is on the Government "to demonstrate that Defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona,* 384 U.S. 436, 475 (1966). "Generally, statements elicited by law enforcement officials while a defendant is in custody must be preceded by *Miranda* warnings or they are inadmissible." *People v. Farata*, 2007 Guam 8 ¶ 20 (citation omitted). However, "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Farata*, 2007 Guam 8 ¶ 22 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980)).

**A. Statement at Scene**

The Court first turns to the statement Defendant made at the scene where he admitted to having "ice" on his person. "*Miranda* ... holds that an individual is in custody when he or she is 'taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Farata*, 2007 Guam 8 ¶ 23 (quoting *People v. Muritok,* 2003 Guam 21 ¶ 12).

> The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.

*Farata*, 2007 Guam 8 ¶ 36 (internal citations and quotation marks omitted).

Here, although Defendant was handcuffed and in custody, Defendant was not being interrogated at this point in time. Officer Lorenzo asked Defendant if he had anything in his pockets as he was being patted down for weapons. Prior to this, Defendant fled from Officer Lorenzo and continued to resist arrest after they made physical contact, and Officer Lorenzo testified that while pursuing Defendant on foot, he saw Defendant reach into his jacket and look back, which he thought indicated Defendant might have a weapon. The Court finds that Officer Lorenzo asked Defendant if he had anything on his person for his protection. *See, e.g., United States v. Webster,* 162 F.3d 308, 332 (5th Cir. 1998) ("the police acted constitutionally when they asked [the defendant] whether he had any needs in his pockets that could injure them during their pat down; such questioning, needed to protect the officers, does not constitute interrogation under *Miranda.*"); *United States v. Lester,* 98 F. 4th 772, 774-75 (6th Cir. 2024) (finding no *Miranda* violation where the officer, before patting down a suspect, asked whether there was "anything else on you, any other drugs, anything that would stick or harm me."); *People v. Martinez,* 53 A.D.3d 508, 50 (N.Y. 2008) ("The officer's question did not have to be preceded by *Miranda* warnings because it was asked to ensure the officer's safety while he searched the defendant and was not an interrogation aimed at eliciting an incriminating statement."). Accordingly, Defendant's response that he had "ice" on him was not obtained in violation of *Miranda,* and the Court finds no basis to grant the Motion to Suppress on this ground.

## B. Statements at Precinct

The Court next turns to the statements made by Defendant during his interviews with Officers Pangelinan and Lorenzo. At this time, Defendant was clearly in custody and was subject to interrogation by the officers. Defendant was advised of his *Miranda* rights by both Officers Pangelinan and Lorenzo and subsequently made incriminating statements. Defendant argues that "[i]t was only because he had been brutalized and held at gunpoint that [he] waived his rights and gave incriminating statements." (Mot. Suppress at 3). Defendant further argues that "[p]olice brutality does not need to be 'life threatening' to demonstrate a supposed waiver is involuntary; indeed, even verbal threats can be sufficient." (Deft. Proposed FFCL at 8).

"Involuntary or coerced confessions are inadmissible at trial, because their admission is a violation of a defendant's right to due process under the Fourteenth Amendment. A confession is involuntary if it is not 'the product of a rational intellect and a free will.'" *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (internal citations omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

> Coercive police activity can be the result of either physical intimidation or psychological pressure. Whether a confession is involuntary must be analyzed within the totality of the circumstances. The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age.

*Brown*, 644 F.3d at 979 (internal citations and quotation marks omitted). "[A]ny criminal trial use against a defendant of his involuntary statement is a denial of due process of law, even though there is ample evidence aside from the confession to support the conviction." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (internal quotation marks and citations omitted).

Here, Defendant's physical altercation with Officer Lorenzo occurred two hours prior to his interviews with Officer Pangelinan and Officer Lorenzo at the Dededo Precinct, and after Defendant failed to comply with a traffic stop. Defendant refused to stop his motorcycle and pull over even though Officer Lorenzo had activated his lights and siren in his marked patrol vehicle to effectuate a traffic stop. Eventually, Defendant either fell off the bike or crashed it by the entrance to Chalan Ramirez and took off running. Officer Lorenzo stopped his patrol car and chased after Defendant on foot. Defendant continued running into the jungle, even though Officer Lorenzo yelled for him to stop. Officer Lorenzo observed while in pursuit that Defendant stuck his hand into his jacket as if he was reaching for a weapon. Officer Lorenzo eventually tackled Defendant to stop him from running. Officer Lorenzo ordered Defendant to stop resisting, however, Defendant continued to resist and punched Officer Lorenzo's arms and at one point reached around Officer Lorenzo's waist near his firearm. Officer Lorenzo testified that his physical actions against Defendant (punching Defendant in the stomach, striking Defendant in

the face, and throwing Defendant) were because Defendant continued to struggle with him and refused to comply. Defendant was not compliant until he was handcuffed. Although Defendant complained of pain to his right finger and rib cage to Officer Pangelinan and ultimately had to sign his waiver form with his non-dominant hand, the medics called to evaluate Defendant determined that he did not have life threatening injuries and did not transport him to the hospital. Further, Officer Pangelinan testified that Defendant told him the pain was from when the motorcycle spilled on the road. Officer Pangelinan verbally reminded Defendant of his *Miranda* rights before questioning him about each open GPD case. Defendant also initially denied some of the accusations against him, and later recanted. Defendant's interviews with Officers Pangelinan and Lorenzo at the Dededo Precinct were less than an hour combined. Defendant was not handcuffed during his interviews, and neither officer had their weapon drawn during their respective interview. Once Defendant told Officer Lorenzo he did not want to answer any more questions, the interview was stopped. Defendant was formally arrested shortly after the interview concluded. Based on the totality of the circumstances, the Court does not find that Defendant's physical altercation with Officer Lorenzo over two hours prior to his interviews at the station was objectively coercive or the crucial motivating factor in Defendant's decision to offer his statements. Accordingly, the Court finds no basis to grant suppression on this ground.

## C. Audio/Video Recording

Lastly, Defendant argues that his statements should be suppressed because his interrogation was not recorded by audio/video means. (Mot. Suppress at 4). Defendant moves the Court to adopt the standards set forth in *Stephan v. State,* 711 P.2d 1156 (Alaska 1985) and *State v. Scales,* 518 N.W. 2d 587 (Minn. 1994). *Id.* The Supreme Court of Minnesota mandated the electronic recording of custodial interrogations in *Scales,* holding that "all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention." 518 N.W. 2d at 592. The Supreme Court of Alaska held in *Stephan* that "an unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's rights to due process, under the Alaska

Constitution." 711 P.2d at 1158. While recording interviews may be good investigative practice, the Court notes there is no duty to record in this jurisdiction. In the absence of such a requirement, the Court finds no basis to suppress the statements on this ground.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. Parties shall return for Further Proceedings on **October 27, 2025** at **2:30 p.m.**

**IT IS SO ORDERED** this **23rd** day of October, 2025.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

_AG, H. Quitugua_

Date: 10/23/25 Time: 8:41am

_Antonio C. Cruz_
Deputy Clerk, Superior Court of Guam

*People v. Susuico*
Case No. CF0492-22
Decision and Order